UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

STEPHEN D. SHELTON
    Plaintiff,

  —V—

JOSEPH M. CURRY

AMANDA J. GREGORY

SUSAN BOEDEKER

SANDRA A. CASTILLO

OLIVIA HERRERA

CHRISTINE M. HEADY

M. HAQUE

JOY O. ONUOGU

LOLA LINCOLN

M. BENTANAR

BRIDGETTE HAYES

Sued in their individual
and official capacities
    Defendants

Case No.

Hon.

United States Courts
Southern District of Texas
FILED

MAY 10 2023

Nathan Ochsner, Clerk of Court

# COMPLAINT WITH JURY DEMAND

## Introduction

This is a civil rights action filed by Stephen D. Shelton, a state prisoner, for damages and relief under 42 U.S.C. § 1983, alleging deliberate indifference to a serious medical need, denial of access to a medical care specialist, and substantial delay in violation of the Eighth Amendment to the United States Constitution. The plaintiff also alleges a denial of the Due Process clause of the Fourteenth Amendment to the United States Constitution. The plaintiff also alleges the torts of physical and emotional injury, pain and suffering, and a deprivation of his life and property (left eye) due to negligence, a deliberate indifference to medical needs and to future health and safety of the plaintiff's well being, medical neglect, as well as medical malpractice.

## Jurisdiction

1.) The Court has jurisdiction over the plaintiffs claims of violation of Federal Constitutional rights under 42 U.S.C §§ 1331 (1) and 1343

2.) The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C § 1367.

## PARTIES

3.) The plaintiff, Stephen D. Shelton was incarcerated at Byrd Unit, Wallace Unit, and Memorial Unit in the Texas Dept. of Criminal Justice during the events described in this complaint. The plaintiff is currently incarcerated at the Clemens Unit in T.D.C.J.

4.) Defendant Joseph M. Curry is the PA-C on the Byrd Unit as a medical official. He is employed at the Byrd Unit and is responsible for determining medical needs and medical recommendations for scheduling medical appointments and ensuring medical provisions outside the prison when a prisoner needs specialized treatment or evaluation. He is sued in his individual and official capacity.

5.) Defendant Amanda J. Gregory is an L.V.N. and is employed at the Byrd Unit as a medical official. She is responsible for determining medical needs and evaluating medical care. She is sued in her individual and official capacities.

6.) Defendant Susan Boedeker is an L.V.N. and is employed at the Wallace Unit as a medical official She is responsible for evaluating medical needs and determining medical care. She is sued in her individual and official capacities.

7.) Defendant Sandra A. Castillo is an L.V.N. and is employed at the Wallace Unit as a medical official. She is responsible for evaluating medical needs and determining medical care. She is sued in her individual and official capacities

8.) Defendant Olivia Herrera is an R.N. and is employed at the Wallace Unit as a medical official. She is responsible for evaluating prisoners and scheduling appointments and reporting medical concerns. She is sued in her individual and official capacities

9.) Defendant Christine M. Heady is an **APRN**, FNP-BC and is the medical administrator that is employed at the Wallace Unit. She is generally responsible for ensuring provision of medical care to prisoners and specifically for scheduling and approving medical appointment outside the prison when a prisoner needs specialized treatment or evaluation. She is sued in her individual and official capacities.

10.) Defendant Joy O. Onuogu is an APRN,

FNP and is employed at the Memorial Unit. She is the medical administrator and is generally responsible for ensuring medical care to prisoners and specifically for scheduling medical appointments outside the prison when a prisoner needs specialized treatment or evaluation. She is sued in her individual and official capacities.

11.) Defendant M. Haque is the medical practitioner and is employed at Memorial Unit. He is responsible for ensuring provision of medical care to prisoners and to assess specific needs of specialized treatment and continued care. He is sued in his official and individual capacities.

12.) Defendant Lola Lincoln is employed at the Memorial Unit as the Grievance Investigator. She is responsible for recording and responding to grievance issues from prisoners. She is sued in her individual and official capacities.

13.) Defendant M. Bentanar is the Deputy Grievance Investigator at the Memorial Unit and is responsible for investigating grievance

issues from prisoners, as well as recording and responding to grievance issues. She is sued in her official and individual capacities.

14.) Defendant Bridgette Hayes is the senior warden at Memorial Unit. She is responsible for all of the prisoners in their general care and is also responsible for answering outside inquiries from families complaints and concerns, as well as the resolutions to them. She is sued in her individual and official capacities

15.) All defendants have acted under color of state law relevant to this complaint.

16.) The plaintiff currently resides in the Texas Department of Criminal Justice at the Clemens Unit.

# FACTS

17.) On August 5th, 2021 the plaintiff was tested for Covid on the Byrd Unit and tested positive for Covid and was sent into medical segregation.

18.) On or about August 9th, 2021 the plaintiff noticed increased blurry vision and reported this to defendant Amanda J. Gregory during a vitals check. The plaintiff was told by the defendant that I was under covid protocal and was not allowed in the infirmiry for any other reason except for covid and was told to submit a request when released from medical segregation.

19.) On August 20th, 2021 the plaintiff was released back into general population after passing covid protocal and testing.

20.) On September 8th, 2021 the plaintiff submitted a request to be seen by the medical staff.

21.) On September 11th, 2021 the plaintiff was seen by defendant Amanda J. Gregory. The plaintiff reported blurred vision, floating objects and that he saw a bright flash of light like an orb

that stayed for over a minute while in medical segregation. The plaintiff stated his concern for his vision. The defendant Amanda J. Gregory administered a basic eye chart vision test and failed to write in the medical report about the flash of light.

22.) On or about September 17th, 2021 the plaintiff went in to medical without submitting a request as he was afraid for his eye sight as it was worsening. Defendant Amanda J. Gregory came to speak to the plaintiff. The plaintiff reported increased blurry vision and orbs of light. Defendant Amanda J. Gregory administered a basic eye chart test. The plaintiff asked how soon he would be able to see a specialist. Defendant Amanda J. Gregory said that an appointment would be made. At that time Defendant Joseph M. Curry yelled at the plaintiff not to come into medical again to complain about his vision because the plaintiff "needed glasses".

23.) On or about September 20th, 2021 the plaintiff was transferred from Byrd Unit in Huntsville, Texas to the Wallace Unit in Colorado City, Texas.

24.) On or about September 22ND, 2021 the plaintiff arrived on the Wallace Unit and was administratively and medically processed into the Unit. Defendant Christine M. Heady, the medical Administrator processed the medical file on the plaintiff. The defendant acknowledged there was a referal to see a specialist and would make arrangements for an appointment.

25.) On or about September 30th, 2021 the plaintiff went in to medical and was seen by defendant Susan Boedeker. The plaintiff asked when there would be an appointment as his eye sight was worsening. The defendant said to fill out another request for medical.

26.) The plaintiff made several requests to be seen for his eye sight at Wallace Unit and made several "unrequested" stops to speak with someone about a specialist as he was severely afraid of his worsening eye sight.

27.) On October 21ST, 2021 the plaintiff was called in to medical for one of his requests. The plaintiff was seen by defendant

Susan Boedeker in medical. The plaintiff reported floating objects, blurred vision, white balls of light and a significant loss of periphrial vision in his left eye. The plaintiff was given a basic eye chart test by defendant Susan Boedeker. The defendant did not know why I could not see and had her co-worker, defendant Sandra Castillo, do the same basic eye chart test. The plaintiff asked when he would be seen by a specialist. To which both defendants Susan Boedeker and Sandra Castillo said I would be referred to see a specialist.

28.) On November 1st, 2021 the plaintiff walked into the medical department to complain about his worsening eyesight, that I needed to see a specialist immediately. Defendants Susan Boedeker and Sandra Castillo told the plaintiff to submit a request and to stop coming to medical because it was not an emergency. At about 5 pm the plaintiff walked into the Unit Majors office and was fearfully pleading with the Major to do something to help me be seen by a doctor or a specialist. The Unit Major issued the plaintiff a referral to be seen by medical the following day.

29.) On November 2ᴺᴰ, 2021 the plaintiff walked in to medical with the pass issued by the Unit Major. The plaintiff was given a basic eye chart test and could not even see the eye chart with his left eye.

30.) On November 3ʳᵈ, 2021 the plaintiff was sent to Texas Tech University Medical Center in Lubbock Texas and was seen by an opthimologist specialist by the name of Dr. Kelly Mitchell. Dr. Kelly Mitchell examined the plaintiff and ordered an emergency surgury due to a RETINAL DETATCHMENT in the plaintiffs left eye.

31.) On November 4ᵗʰ, 2021 the plaintiff was seen by the medical staff at the Wallace Unit, for a follow up visit. Defendants Susan Boedeker, Sandra A. Castillo, and Christine M. Heady were asking the plaintiff what happened. The plaintiff said that he had a RETINAL DETATCHMENT. Defendant Sandra A. Castillo had the plaintiffs medical file in hand and read through the notes and said that the flashes of light were a symptom of that and asked the plaintiff why he did not report this. The plaintiff said to the defendants that he reported

seeing orbs of light and white balls of light
in the medical departments of both the Byrd
Unit and Wallace Unit, and that his reports
were not documented by the medical personel.

32.) On November 5th, 2021 the plaintiff was
transported to Montford medical Unit.

33.) On November 8th, 2021 the plaintiff was
transported to Texas Tech University Medical
Center and recieved a surgury to repair the
Retinal Detatchment in his left eye.

34.) On November 30th, 2021 the plaintiff went
to U.M.C. Texas Tech for a follow-up visit
with Dr. Kelly Mitchell. The plaintiff was conerned
about how he still can't see out of his periphrial
vision. Dr. Kelly Mitchell stated to the plaintiff
that unfortunatly because of the amount of time
had passed that there would be permenant
damage to his left eye.

35.) On December 20th, 2021 the plaintiff felt
a searing pain and saw a bright flash of light.
He immediately reported this to the medical
department at Middleton Unit. The plaintiff was

sent to Hendrick Medical Center in Abilene Texas where he was treated by Anthony Rossettie MD. Dr. Anthony Rossettie determined by an ultrasound that there was further retinal detatchment.

36.) On December 21ST, 2021 the plaintiff was sent to Texas Tech U.M.C. in Lubbock Texas where he was screened by Dr. Kelly Mitchell. Dr. Kelly Mitchell determined that there was further retinal detatchment with a retinal break and admitted the plaintiff for surgury.

37.) On December 22ND, 2021 the plaintiff had a follow-up appointment with Dr. Kelly Mitchell for post surgury care. The plaintiff told Dr. Kelly Mitchell that there was even more vision loss and asked if he would regain his vision. Dr. Kelly Mitchell said that he did minimal surgury for the first time to try to save as much as he could, but the barricade did not hold up. The plaintiff asked if it was due to how much time had passed. Dr. Kelly Mitchell told the plaintiff that it was very unfortunate that so much time had passed because the longer it took for him to get proper

diagnosis, that much of his eye sight could have been saved. Dr. Kelly Mitchell also told the plaintiff that there was an opthalmolic surgical oil that was injected in his eye to hold the lazer barricade and that his vision would be blurred until it was removed. The plaintiff asked how long it would be left in and was told 90 days.

38.) On May 8th, 2022 the plaintiff had a follow up appointment scheduled with Dr. Kelly Mitchell at Texas Tech U.M.C. The plaintiff was seen by Dr. Kelly Mitchell after there was pictures taken of his eyes. Dr. Kelly Mitchell looked at the pictures of the plaintiffs eye where the surgury was done to further examine the retina. Dr. Kelly Mitchell stated to the plaintiff that extensive lazer was required which caused permenant damage to the periphrial vision. When the plaintiff asked Dr. Kelly Mitchell when the surgical oil would be removed as it had been 90 days, Dr. Kelly Mitchell told the plaintiff that because it was not an emergency he was not going to schedule for the removal of the surgical oil left in the eye.

39.) On or about May 19th, 2022 the plaintiff was transferred from Wallace Unit and was re-assigned to Memorial Unit near Houston, Tx.

40.) While at Memorial Unit, the plaintiff made several requests concerning the surgery for removal of the opthamolic oil left in his eye. The plaintiff was seen by defendant Joy O. Onuogu on these occasions and was told that she would schedule an appointment for a surgery.

41.) On August 5th, 2022 the plaintiff made a complaint through the grievance proceedure about his eye, the loss of vision, and for how long it has taken for a post surgury care.

42.) On August 11th, 2022 defendant Lola Lincoln approached K-Line where the plaintiff was housed and told him that his grievance would not be accepted, even after it was submitted 3 times and was within the grievable time period. The plaintiff told defendant Lola Lincoln that his grievance was within the perameters and needed to file and exhaust remedy before turning all documents into litigation. The defendant looked overly concerned and became very cautious. When the plaintiff asked about when his grievance would be properly investigated and returned, the defendant, Lola Lincoln, walked away from the plaintiff. The plaintiff was denied grievance proceedure and was never returned his grievance.

43.) On August 22ND, 2022 the plaintiff requested to see medical as he was experiencing constant headaches and pain in his left eye, and pressure.

44.) On August 23RD, 2022 the plaintiff went to medical and was seen by defendant Joy O. Onuogu. The plaintiff told the defendant he was experiencing pressure in his left eye and it was causing constant headaches and pain. The plaintiff expressed concern about how long the surgical oil had been left in his eye and wanted to know when a surgury would be scheduled for removal as it was post surgury care. Defendant Joy O. Onuogu stated that she would schedule a check-up and nothing more. The plaintiff was not even prescribed anything for the pain.

45.) On August 23rd, 2022 the plaintiff filed a grievance about not aquiring any relief from the pain and pressure he was experiencing and the constant headaches. The grievance contained also the complaint about how long the surgical oil had been left in his eye and the loss of vision. The plaintiff exhausted Step 1 and was denied the return of the grievance for Step 2. The plaintiff still has not recieved this grievance back.

46.) On or about September 15th, 2022 the plaintiffs mother, Susan K. Locke, called the Ombudsman to file a complaint for the plaintiff about why he has not recieved a post surgury removal of oil.

47.) On September 28th, 2022 the plaintiff recieved a surgury to remove the surgical oil that had been left in his eye since December 21st, 2021.

48.) On October 3rd, 2022 the plaintiff was layed in to see the medical provider, defendant M. Haque. The defendant looked over the notes on the computer sent by Hospital Galveston. The defendant looked up at the plaintiff and told him, "the best we can do now is hope and pray for a healing miracle for your eye...", as his professional opinion for further treatment.

49.) On October 3RD, 2022 the plaintiff wrote a grievance about his visit to medical with defendant M. Haque. The plaintiff has not recieved back his document for exhaustion and or Step 2.

50.) On October 5th, 2022 the plaintiff was called to see the defendant, Bridgette Hayes (Warden), before the Unit Classification Committee. The plaintiff was

informed by the defendant that a complaint was made by his mother, Susan K. Locke, about the overall safety of her son, the plaintiff. The plaintiff expressed to the defendant, Bridgette Hayes, that the doctor told the plaintiff to be extremely careful in the prison and that his eyesight would be fragile for the rest of his life. To not get hit or the surgury would come undone. The plaintiff told the defendant of his line class status as an S2 "trustee" and that he was housed with G3's and G4's across the hall and that the environment was more hostile. That it was also against TDCJ policy for S2 to be housed not accordingly to their status and requested to be immediately housed according to his line class status or be sent to an open dormatory in a safer environment due to the nature of his medical condition. The defendant told the plaintiff he would remain where he was at, but would be placed on a "list" to be housed in an open dormatory single cell, but it was for workers and Bible college students, that it was months long. Thus placing workers and students as more important than those with disabilities.

51.) On October 26th, 2022 the plaintiff went for a follow-up visit for the removal of the surgical oil and for an in depth vision test. The plaintiff asked about the vision being so bad in the central area as he could not even read or see objects clear even at close range. The doctor could not determine as to why his vision was poor. The plaintiff then asked the doctor if it was due to the amount of time that had passed for a medical determination was the cause of so much vision loss. The doctor told the plaintiff that it was unfortunate for how long it took as the retina was deteriorating from the eye and that the longer it was left in that condition was the cause of so much vision loss. The doctor then ordered that an MRI be done for further examination. Location was Hospital Galveston.

52.) On October 31st, 2022 the plaintiff was seen in medical by defendant Joy O. Onuogu and the plaintiff told the defendant that there was an order for an MRI to be done and wanted to be informed of how soon this would be done. The defendant said that it would be expidicted.

53.) On November 1ST, 2022 the plaintiff requested to obtain all medical records pertaining to every infimiry visit, doctor visits and appointments with names of all individuals involved for evidence for litigation.

54.) On December 9th, 2022 the plaintiff was transferred from Memorial Unit to Clemens Unit. The plaintiff was denied property reciepts for inventory at Memorial Unit.

55.) On or about March 18th, 2023 the plaintiff recieved his property containing legal documents and personal items. The plaintiff was denied access to his legal papers from December 9th 2022 until this date and when he received his property, many items were stolen.

56.) On April 11th, 2023 the plaintiff had an MRI done at Hospital Galveston after another complaint had been made through grievance procedure.

## Exhaustion of Administrative Remedies

57.) The plaintiff has exhausted his administrative remedies with respect to all claims and all defendants.

## Claims for Relief

58.) The failure of defendants Curry, Gregory, Boedeker, Castillo and Heady to get the plaintiff in to see a specialist constitutes deliberate indifference to the plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution.

59.) The actions of defendants Gregory, Boedeker, Castillo, and Heady were negligent in not reporting the plaintiff's complaint of flashing lights, which is a common symptom of retinal detachment, constitutes torts of negligence under the law of Texas.

60.) The actions of defendants Gregory, Curry, Boedeker, Castillo, and Heady in making medical determinations without specialized knowledge of a serious medical need constitutes malpractice under the law of Texas and constitutes torts of malpractice under the law of Texas.

61.) The failure of defendants Curry, Gregory,

Boedeker, Castillo, Heady to provide specialized care that resulted in the permenant loss of the plaintiffs left eye rendering the plaintiff disabled for life constituted a deprivation of life, liberty, and property which violated the Fourteenth Amendment to the United States Constitution.

62.) The failure of defendants Herrera, Heady, Haque, and Onuogu to provide for the removal of surgical oil in the plaintiffs left eye through the scheduling of surgury and post surgical care follow up constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

63.) The failure of defendants Herrera, Heady, Haque, and Onuogu to provide for the removal of surgical oil in the plaintiffs left eye through the scheduling of surgury and post surgical care follow-up constituted torts of negligence under the law of Texas.

64.) The actions of defendants Lincoln and Bentanar in refusing the plaintiffs grievances to exhaust remedy denied the plaintiff due process of law in violation of the Fourteenth Amendment to the United

States Constitution.

65.) The failure of defendant Hayes to take immediate action of placing the plaintiff in an environment consistent with his line class status and an environment that would not risk the future safety and health to the plaintiff constituted a deliberate indifference to the plaintiffs serious medical needs in violation of the Eighth Amendment to the United States Constitution.

66.) The failure of defendant Hayes to take immediate action of placing the plaintiff in an environment according to the appropriate line class, denied the plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution.

# RELIEF REQUESTED

WHEREFORE, plaintiff requests that the court grant the following relief:

A.) Issue a declaratory judgement by stating that:

1.) The substantial delay caused by the actions of defendants; Curry, Gregory, Boedeker, Castillo, Herrera, Heady, Haque, and Onuogu were deliberately indifferent to the plaintiffs rights and constitutes negligence.

2) Defendants Curry, Gregory, Boedeker, Castillo, Herrera, Heady, Haque and Onuogu; declare their actions in failing to provide adequate medical care for the plaintiffs left eye violated the plaintiffs rights under the Eightth Amendment to the United States Constitution.

3.) Defendants Curry, Gregory, Boedeker, Castillo, Herrera, Heady, Haque, Onuogu, Lincoln, Bentanar, and Hayes; declare their actions did deprive the plaintiffs life, liberty, and property violating the Due Process clause of the Fourteenth Amendment to the United States Constitution

4.) Defendant Hayes; declare her actions of showing a deliberate indifference to a serious medical need in providing a safer environment for the plaintiffs safety violated the rights of

the plaintiff under the Eighth Amendment to the United States Constitution.

5.) Defendant Hayes; declare her actions of showing a deliberate indifference to a serious medical need in placing the plaintiff in an environment accordingly with his custody level violated the rights of the plaintiff under the Fourteenth Amendment to the United States Constitution.

B.) Award compensatory damages in the following amounts;

1.) $1,500,000.00 jointly and severally against defendants Curry, Gregory, Boedeker, Castillo, Herrera, Heady, Haque, and Onuogu for the physical and emotional injuries sustained as a result of the plaintiffs permenant disability and loss of vision in his left eye.

2.) $10,000.00 jointly and severally against defendants Lincoln, Bentanar, and Hayes for the deprivation of liberty and emotional injury resulting from their denial of due process in connection of the plaintiffs medical preceedings.

3.) $500,000.00 jointly and severally against defendants Curry, Gregory, Boedeker, Castillo, Herrera, Heady, Haque and Onuogu for the physical and emotional injuries resulting from their failure to provide prompt and adequate medical attention and care to plaintiff.

C.) Award punitive damages in the following amounts:

1.) $20,000⁰⁰ each against defendants Curry, Gregory, Boedeker, Castillo, Herrera, Heady, Haque and Onuogu.

2.) $15,000⁰⁰ each against defendants Lincoln, Bentanar, and Hayes.

D.) Award the plaintiff for future loss of wages; in an amount determined by the court.

E.) Award the plaintiff for future medical expenses; in an amount determined by the court.

F.) Grant such other relief as it may appear that the plaintiff is entitled.

DATE: 05/05/2023

RESPECTFULLY SUBMITTED,

Stephen D. Shelton
TDCJ# 01869779
Clemens Unit
11034 Hwy 36
Brazoria, Tx 77422

Stephen D. Shelton



STEPHEN D. SHELTON
TDCJ # 01869779
CLEMENS   UNIT
11034 HWY 36
BRAZORIA, TX 77422

United States Courts
Southern District of Texas
FILED
MAY 10 2023
Nathan Ochsner, Clerk of Court

LEGAL MAIL

∼ LEGAL MA

CLERK
UNITED STATES DIST
SOUTHERN DISTRICT
POST OFFICE BOX
HOUSTON, TEXAS